UNITED STATES of America, Appellee

v.

Mark Anthony PUGH, Appellant

No. 97–3133.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 9, 1998.

Decided Oct. 23, 1998.

Leslie B. Holt, appointed by the court, argued the cause and filed the briefs for appellant.

Thomas C. Taylor, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher and Thomas C. Black, Assistant U.S. Attorneys.

Before: EDWARDS, Chief Judge, GINSBURG and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

This case presents a narrow question of first impression in this circuit: whether the term "prior felony convictions," in the context of calculating a defendant's base offense level under United States Sentencing Guidelines Manual § 2K2.1(a), includes a convic-

tion based on an offense that was committed after the commission of a federal firearms offense but before sentencing on the firearms offense. Because we find the guideline language ambiguous and the commentary clear, we apply the commentary and reject appellant's challenge to the sentence here in dispute.

## I. BACKGROUND

The facts in this case are not disputed. In 1994, the defendant-appellant, Mark Pugh, was convicted in Superior Court of a felony drug offense ("1994 conviction"). In February 1995, Pugh exchanged several bags of crack cocaine for a stolen machine gun, which he then sold for cash ("instant offense"). In March 1995, Pugh was involved in an altercation that resulted in a felony assault conviction in Superior Court ("1995 conviction"). In October 1995, Pugh was sentenced for the assault. In April 1997, a federal grand jury indicted Pugh for his role in the 1995 machine gun transaction. Pugh then pled guilty to two counts of the indictment, Unlawful Possession of a Machine Gun, in violation of 18 U.S.C. § 922(o), and Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). At sentencing on the instant offense, the District Court included both the 1994 and the 1995 convictions as "prior felony convictions" and accordingly assigned Pugh a base offense level of 26, pursuant to § 2K2.1(a)(1).[1] Pugh's sole claim on appeal is that the District Court should have assigned a base offense level of 22, pursuant to § 2K2.1(a)(3), because he had not yet been convicted of the assault, and indeed had not yet committed the assault, when he committed the instant offense. Therefore, he argues, the 1995 conviction was not a "prior felony conviction" under § 2K2.1(a).

## II. ANALYSIS

Section 2K2.1(a) prescribes the base offense level for unlawful possession of a firearm in relevant part as follows:

(1) 26, if the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18

---

**1.** The 1995 version of the Guidelines was in effect at the time of sentencing.

U.S.C. § 921(a)(30), and the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense; or

. . .

(3) 22, if the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30), and the defendant had one prior conviction of either a crime of violence or controlled substance offense.

Pugh concedes that the 1994 conviction constitutes a prior conviction for the purposes of § 2K2.1(a) and that the 1995 conviction was a crime of violence. He argues on appeal, however, that the plain language of § 2K2.1(a)(1) precludes consideration of the 1995 conviction as a prior felony conviction, *because he did not commit the March 1995 offense until after the commission of the instant offense.* The Government responds that the commentary to § 2K2.1 clearly contemplates the inclusion of offenses committed after the instant offense, as long as the defendant was convicted prior to his sentencing on the instant offense. Pugh did not object to his sentence in the District Court, so our review is for plain error. *See United States v. Robinson,* 86 F.3d 1197, 1199 (D.C.Cir. 1996).

· The convergence of several factors makes this a perplexing case: first, § 2K2.1(a) on its face admits of the construction advanced by Pugh; second, Pugh's argument, at least as a matter of common sense, is quite persuasive (and it finds support in at least one circuit court decision); and, finally, the commentary underlying § 2K2.1(a) firmly supports the Government's position and is plainly at odds with the position espoused by Pugh. For the reasons that follow, we are constrained to follow the commentary.

### A. The Language of § 2K2.1(a)

Calculation of Pugh's base offense level under § 2K2.1(a) turns on whether he "had at least two prior felony convictions." U.S.S.G. § 2K2.1(a)(1). At the time Pugh committed the instant offense, he had only one prior felony conviction. However, at the time of his sentencing on the instant offense, he had two prior felony convictions. Section 2K2.1(a) does not specify which is the relevant point in time to evaluate the defendant's criminal history, but Pugh contends that the language of § 2K2.1(a) supports only one interpretation. He argues that the Commission's use of the past tense verb "had," along with the term "prior," clearly indicates that the Commission only intended the sentencing court to include convictions that the defendant "had" at the time he committed the instant offense.

Pugh's claim is not without merit. If the Commission had intended the calculation of a defendant's base offense level to include all post-offense convictions, it easily could have directed the sentencing court to evaluate how many prior felony convictions the defendant "has" at the time of sentencing, rather than how many he "had" at some unspecified point in time. Indeed, one circuit court opinion that examines the language of § 2K2.1(a) concludes that the Commission's choice of verb tense "unambiguously indicates that the relevant period for considering prior convictions is not open-ended," and that the "most natural reading of the guideline" is that only pre-offense convictions count for the purposes of § 2K2.1(a). *United States v. Barton,* 100 F.3d 43, 45 (6th Cir.1996).

The use of the word "prior" also supports Pugh's interpretation. The guideline does not specify whether "prior" refers to the time of the offense or the time of sentencing, but "prior" obviously refers to convictions obtained · before some event. Given that § 2K2.1 defines the base offense level for the instant offense, it is not unreasonable to assume that the relevant event is commission of the instant offense. *See id.*

We are inclined to agree that Pugh's interpretation of § 2K2.1(a), standing alone, is the most plausible reading. However, we do not agree with the Sixth Circuit that the language is unambiguous. Without a point of reference, we do not know for sure whether "had" and "prior" refer to the time of the offense or the moment of sentencing. The Fifth Circuit opined that "use of the past tense might be an intuitive basis for determining that the guideline is referring to the earlier point in time, *i.e.,* commission of the

offense." *United States v. Gooden,* 116 F.3d 721, 724–25 n. 5 (5th Cir.1997). However, use of the past tense may simply indicate that any conviction sustained before the moment of sentencing should be included in the base offense level calculation. If the guideline language included a qualifying phrase, such as "the defendant had at least two prior convictions *at the time of the offense,*" this would be an easy case. But without such qualifying language, we must look to the commentary for guidance. *See id.*

### B. The Commentary to § 2K2.1

Application note 5 to § 2K2.1 directs the court to application note 3 of § 4B1.2 for the definition of "prior felony conviction(s)." U.S.S.G. § 2K2.1, comment. (n.5). That application note defines "felony" but does not shed light on the definition of "prior" or use of the verb "had." *See* U.S.S.G. § 4B1.2, comment. (n.3). The remainder of application note 5 to § 2K2.1, however, provides that "[f]or purposes of determining the number of [prior felony] convictions under [§ 2K2.1(a) ], count any such prior conviction that receives any points under § 4A1.1 (Criminal History Category)." U.S.S.G. § 2K2.1, comment. (n.5).

Following the direction of application note 5, we look to § 4A1.1 to see whether Pugh's 1995 conviction would receive any criminal history category points. Section 4A1.1 adds points to a defendant's criminal history score for "each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). The commentary to § 4A1.2 defines "[p]rior sentence," as used in § 4A1.1, as "a sentence imposed prior to sentencing on the instant offense." U.S.S.G. § 4A1.2, comment. (n.1). Pugh's sentence on the 1995 conviction was imposed well before his sentencing on the instant offense. Thus, he would (and, in fact, did) receive points for the 1995 conviction under § 4A1.1. Pursuant to application note 5 to § 2K2.1, then, Pugh's 1995 conviction counts as a prior felony conviction for the purposes of § 2K2.1(a).

Pugh contends that this journey through the Guidelines commentary bypasses § 4B1.2(3), which specifically defines the term "two prior felony convictions" as meaning that "the defendant committed the instant offense subsequent to sustaining at least two felony convictions." U.S.S.G. § 4B1.2(3). If applicable to his case, this provision would clearly support Pugh's position. However, the purpose of § 4B1.2 is to define the terms of § 4B1.1, not § 2K2.1(a). The commentary to § 2K2.1 says absolutely nothing about § 4B1.2(3). *See United States v. Krzeminski,* 81 F.3d 681, 683–84 (7th Cir. 1996).

### C. Application of Stinson v. United States

It is undisputed that the commentary in the Guidelines Manual serves to "interpret the guideline[s] or explain how [they are] to be applied." U.S.S.G. § 1B1.7. In *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), the Supreme Court established the proper method of interpreting the Guidelines when the commentary appears to contradict the language of a particular provision. "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 38, 113 S.Ct. 1913. Only when there is a "flat inconsistency," where the "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other," will the plain language of the guideline prevail. *Id.* at 43, 113 S.Ct. 1913.

We believe that the language of § 2K2.1(a) tends to support Pugh's interpretation but is nevertheless ambiguous with respect to whether his 1995 conviction constitutes a prior felony conviction. Under the commentary, however, the 1995 conviction clearly does constitute a prior felony conviction. The issue is whether there is a "flat inconsistency" between the guideline and its commentary such that the language of the guideline prevails under *Stinson.* Because we do not think there is a flat inconsistency, the commentary is authoritative.

In *Robinson,* we said, citing *Stinson,* that "[c]ommentary is not 'inconsistent' with a guideline simply because it adopts what we

might regard as one of the less likely interpretations of a guideline." *Robinson,* 86 F.3d at 1199. Here, we do regard the commentary's interpretation of § 2K2.1(a) as the less likely interpretation, both as a matter of common sense and in light of the purpose of § 2K2.1, which is to determine the defendant's base offense level. Calculation of the base offense level in Chapter Two of the Guidelines Manual is an inquiry that "pertains to offense conduct." U.S.S.G. Ch.2, intro. comment. As the *Barton* court noted, "[c]onceptually, it is difficult to see how unrelated post-offense criminal actions can retroactively render the original federal offense more serious." *Barton,* 100 F.3d at 45. Nevertheless, where, as here, we find the guideline language ambiguous, we are bound by *Stinson* to follow the commentary.

### III. Conclusion

For the reasons set forth above, we affirm Pugh's sentence.

*So ordered.*